UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

In re:

ALASKA FISHING ADVENTURE, LLC,

Debtor.

Case No. 16-00327-GS
Chapter 7

### MEMORANDUM DECISION RE: MOTION TO SELL REMAINING ESTATE ASSETS

The chapter 7 trustee has filed a motion to sell the remaining assets in the debtor's chapter 7 estate, chief among them litigation claims against part owner Brad Giroux and his wife, Jessica. Competing purchase offers have been submitted by Brad Giroux's father, Robert Giroux, and Brad's former business partner in the debtor, Philip Johnston and his wife, Rebekah. The trustee has requested that this court approve the sale of the remaining assets to Robert Giroux. For the reasons stated below, this court will grant the trustee's request.

**I. BACKGROUND**

The lengthy history among the parties is well established in this case and will not be repeated in detail here. Only the following facts are relevant to this decision.

Brad Giroux and Philip Johnston were partners in the debtor that operated a fishing lodge in Portage Creek, Alaska. Giroux owned 60% of the business, while Johnston owned the remaining 40% interest.[1] Their business relationship soured as Johnston came to believe Giroux was mismanaging the business.[2] The Johnstons sued Brad and Jessica Giroux for various business-

---

[1] ECF No. 78 at p. 6, para. 10.

[2] *Id.*, *passim*.

related infractions.[3] The Johnstons obtained a state court judgment against them.[4] Philip Johnston was awarded financial control over the debtor in the state court action,[5] and opted to place the debtor into bankruptcy. The debtor commenced this chapter 7 case on October 27, 2016. The chapter 7 trustee promptly issued a notice of asset case and deadline to file proofs of claim.[6]

After the trustee issued his notice of asset case, the Johnstons filed three proofs of claim: Philip filed a claim for compensation ($42,550); Rebekah filed a claim for wages ($18,200) and money loaned ($62,720.13); and Philip filed a third claim of $190,000 representing his 40% interest in the debtor. The Johnstons withdrew all three of their proofs of claim on May 2, 2017, and are no longer creditors of the estate though Philip continues to hold his membership interest in the debtor.[7]

Brad's father, Robert Giroux, also filed a proof of claim for money loaned to the debtor in the unsecured amount of $227,437.82. Brad also filed multiple proofs of claim: $75,738 for "employment relationship and related rights," approximately $13,000 of which he asserted as a priority wage claim; $49,374.24 for "reimbursement of expenses and rights to repayment"; and a claim for 60% of any funds remaining in the estate after all creditors are paid.

On November 23, 2016, the chapter 7 trustee moved to sell certain assets of the debtor, including the fishing lodge and all lodge-related personal and intellectual property, to Peter von Jess (the Lodge Sale).[8] In order to maintain the lodge as a going concern, the Lodge Sale provided for

---

[3] *Id.* at pp. 3-4.

[4] *See* ECF No. 78.

[5] *Id.* at p. 4.

[6] ECF No. 11.

[7] *See* ECF Nos. 37-39.

[8] ECF No. 16.

2

payment of select general unsecured creditors: (1) customers who had placed deposits for the 2017 season; (2) employees with outstanding wage claims; and (3) Branch Air Services, a supplier. No objections to the Lodge Sale were raised, and the court issued its order approving that sale on December 23, 2016.[9] The Lodge Sale was followed by a separate notice of distribution to pay § 507(a)(7) priority claims of the debtor's customers.[10] No objections were raised, and those distributions were made.

On June 20, 2017, the chapter 7 trustee filed a second motion to sell assets of the debtor, this time a note receivable and other miscellaneous property, to buyer Polar Services LLC.[11] As with the Lodge Sale, no oppositions were filed, and the court entered its order approving the second sale on July 20, 2017.[12]

Finally, on May 15, 2018, the chapter 7 trustee filed his motion to sell the remaining assets of the debtor's estate (Motion) to Robert Giroux, the debtor's largest unsecured creditor.[13] After payment of the claims related to the Lodge Sale, only a few unsecured claimants remained other than Robert and Brad Giroux. Excluding the Girouxes, the remaining unsecured debts total $13,445.[14] Robert's purchase offer provides no money to the estate. Instead, he offers to subordinate his substantial unsecured claim to the remaining unsecured claimants, with Brad Giroux to withdraw his proofs of claim upon approval of the sale. Based on the funds remaining in the estate ($55,924),

---

[9] ECF No. 22.

[10] ECF No. 42.

[11] ECF No. 43.

[12] ECF No. 56.

[13] ECF No. 73.

[14] ECF No. 118, at p. 2.

3

after payment of anticipated administrative and priority claims, all general unsecured creditors would receive 100% of their claims.[15]  Robert Giroux would receive any remaining funds.

The Johnstons objected to the proposed sale.[16]  They have since submitted a counter-offer to purchase the assets.[17]  They modified their offer, and filed a "notice of final offer" on October 24, 2018 (Final Offer).[18]  Pursuant to the Final Offer, the Johnstons would pay $18,445 to purchase the estate's remaining assets.  The Johnstons propose to pay $5,000 to the estate, and $13,445 *directly* to the debtor's remaining unsecured creditors outside of bankruptcy, *excluding* Robert and Brad Giroux.  They also condition their offer upon the chapter 7 trustee filing objections to Brad Giroux's proofs of claim.  The Johnstons surmise that upon receipt of the direct payments from them, the paid unsecured creditors would withdraw their claims.  The Johnstons argue that Robert Giroux would receive a higher monetary distribution under their proposal than under his own.

The court held a hearing on the Motion on October 15, 2018.  The trustee gave testimony under oath, noting his concern that the Johnstons' offer could ultimately have a negative impact on the estate, by mandating objections to Brad Giroux's proofs of claim which would generate additional administrative expenses for the estate.  He added that under the Johnstons' offer, there may be nothing filed with the court evidencing the Johnstons' direct payments to the remaining non-Giroux unsecured creditors, which could complicate the final accounting for the case. He also testified that he has served as a chapter 7 trustee for approximately 37 years.  After hearing the chapter 7 trustee's testimony and the arguments of the parties, the court set deadlines for

---

[15]  *See* ECF No. 118 at p. 2.

[16]  ECF Nos. 76, 78.

[17]  ECF No. 120.

[18]  ECF No. 136.

4

supplemental briefing, and took the matter under submission. Supplemental briefs were filed by Robert Giroux, the chapter 7 trustee, the Johnstons and Brad Giroux.[19]

**II.    ANALYSIS**

The trustee seeks to sell property of the estate under § 363(b). Proposed sales are reviewed to determine whether they are within the best interests of the estate resulting from a fair and reasonable price, are supported by a valid business judgment and proposed in good faith.[20] Sales to an insider are subject to heightened scrutiny.[21] Here, both potential buyers are insiders that have ownership interests either directly or indirectly by virtue of a familial relationship with an owner.[22] In this instance, there is an obvious business justification for the sale as the trustee must liquidate the remaining assets of the estate. There has been no challenge to the trustee's good faith in seeking to sell the litigation claims. It is the price that is at issue.

In this instance the proposed sale involves the estate's causes of action against Brad Giroux, the majority member and his wife, Jessica. In reality, a sale of the litigation claims to Robert Giroux will terminate those claims. For this reason, the court must consider the proposed sale offers not

---

[19] *See* ECF Nos. 137-144.

[20] *240 North Brand Partners, Ltd. v. Colony GFP Partnes, LP (In re 240 N. Brand Partners, Ltd.)*, 200 B.R. 653, 659 (9th Cir. B.A.P. 1996) (citing *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841 (Bankr. C.D. Cal.1991)). *See also Slates v. Reger (In re Slates)*, 2012 WL 5359489, at *11 (9th Cir. B.A.P. Oct. 31, 2012).

[21] *Mission Product Holdings, Inc. v. Old Cold, LLC (In re Old Cold, LLC)*, 558 B.R. 500, 516 (1st Cir. B.A.P. 2016).

[22] 11 U.S.C. § 31(B) and (C).

5

only under § 363(b), but also as a settlement of such claims under Fed. R. Bankr. P. 9019.[23]  To evaluate settlements, bankruptcy courts are to consider

    (a)    the probability of success in the litigation;

    (b)    the difficulties, if any to be encountered in the matter of collection;

    (c)    the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and]

    (d)    the paramount interest of the creditors and a proper deference to their reasonable views in the premise.[24]

The trustee advises that he will not pursue any claims against Brad "because the risks involved in any litigation and the difficulty in collecting any judgment that may be entered against him."[25]  The trustee's view of the claims is not meaningfully controverted, although the Johnstons are willing to pursue the estate's causes of action against Brad and Jessica Giroux for their own benefits and purposes.  While the first three *A & C* factors focus upon the claims, they are not materially at issue here as there have been no objections to the sale of the litigation claims, only to whom the claims should be sold.  Regardless of the ultimate purchaser, the claims will be removed from the estate.  The trustee will not be concerned with pursuing or collecting upon the estate's causes of action against Brad and Jessica Giroux.

The court considers the possible delay resulting from the claims to potentially be an issue, though not in the traditional sense.  Ordinarily, settlement of claims is favored as it permits a trustee to avoid the cost and delay of further litigation.  The estate's sale will achieve this goal.  But the

---

[23] *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 290 (9th Cir. B.A.P. 2005); *Goodwin v. Mickey Thompson Entertainment Group, Inc. (In re Mickey Thompson Entertainment Group, Inc.)*, 292 B.R. 415, 420 (9th Cir. B.A.P. 2003)

[24] *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

[25] ECF No. 118, at p. 2.

6

Johnstons' offer requires additional litigation that would be unnecessary if the Giroux offer is approved: the pursuit of objections to Brad Giroux's proofs of claim. The estate is otherwise administered and ready for final distribution.

The offers, therefore, primarily implicate the best interests of the estate and the paramount interests of the creditors.[26] Under either proposal, the non-Giroux general unsecured creditors will receive payment in full. Under the Johnstons' offer, the estate would receive an additional $5,000, *and* be able to distribute the balance of the proceeds from the sale of the lodge to the Girouxes' allowed claims. At the time he filed his supplement, the trustee's counsel estimated the funds net of administrative expenses and priority claims to be $55,924. Under the Giroux offer, Brad Giroux would withdraw his claims totaling $125,112.24, and Robert would receive the balance of the estate funds after payment of the remaining $13,445 of unsecured claims, which projects to be $42,479 based upon the trustee's calculations.

Under the Johnstons' offer, the non-Giroux creditors would be paid off by the Johnstons prior to distribution, leaving Robert and Brad as the only remaining unsecured creditors. The trustee would have approximately $60,924 to distribute to the Girouxes, based upon the additional $5,000 payment to the estate and the Johnstons' satisfaction of the $13,445 in other unsecured debts. In short, the estate would momentarily benefit in the amount of $18,445 from the Johnstons' offer. In

---

[26] The court has previously expressed concerns that the Johnstons' proposed offer was an improper attempt to skew the statutory distribution required by § 726(a) by paying certain claims outside the estate. *See Czyzewski v. Jevic,* 137 S. Ct. 973, 984 (2017). At least one post *Jevic* court has recognized that "[i]n light of the Supreme Court's recent ruling in *Jevic*, parties who seek approval of settlements that provide for a distribution in a manner contrary to the Code's priority scheme should be prepared to prove that the settlement is not only 'fair and equitable'...but also that any deviation from the priority scheme for a portion of the assets is justified because it serves a significant Code-related objective." *In re Fryar*, 570 B.R. 602, 610 (Bankr. E.D. Tenn. 2017). Though these concerns persist as the Johnstons' offer appears to be motivated by self interest rather than any "Code-related objective" such as preservation of a business entity, the court has given the Johnstons considerable latitude in formulating their offer as they are appearing without counsel. Upon further consideration the court finds that it is not necessary to decide whether the Johnstons' offer violates *Jevic*.

a pro rata distribution, Robert Giroux would receive approximately 65% of the $60,924 ($39,600.60), and Brad would receive approximately 35% ($21,323.40).[27] The Johnstons' offer would leave the estate, at least temporarily, with over $350,000 in remaining unsecured claims, whereas the Giroux offer would reduce that amount by approximately $125,000, with the withdrawal of Brad Giroux's claims upon approval of the sale.

The purchase offers in this instance differ from most as they do not appear to be driven by economic rationality. Robert Giroux is attempting to leverage his situation as the largest unsecured creditor to end contentious litigation against his son and daughter-in-law. He is willing to walk away from $18,445 (assuming Brad's proofs of claim are without merit). On the other hand, the Johnstons desire to continue to litigate against Brad and Jessica on behalf of the estate, although they personally already have a judgment against them individually, and are further requiring the trustee to hold the bankruptcy open to litigate Brad's proofs of claim. The trustee does not believe the underlying claims against Brad are valuable, and would prefer to make a final distribution and close the case.

"The overarching purpose of Chapter 7 [is] to ensure the orderly liquidation of the debtor's estate and equal treatment of creditors within each class."[28] It is the trustee's responsibility to do so. "Under the oversight of the Office of the United States Trustee, the Chapter 7 trustee has the responsibility to properly administer and distribute property of the estate to the debtor and other parties entitled to receive such property."[29] In the context of sales of estate property under § 363,

---

[27] If Brad's priority wage claim of $13,000 is allowed, then Brad would receive payment on that claim prior to any distribution on his and Robert's general unsecured claims.

[28] *In re Livecchi*, 2014 WL 6655702, at *3 (Bankr. W.D.N.Y. Nov. 20, 2014), *citing* 6 Collier on Bankruptcy ¶ 700.01 (16th ed. rev.).

[29] *Zavala v. Wells Fargo Bank, N.A. (In re Zavala)*, 444 B.R. 181, 191 (Bankr. E.D. Cal. 2011).

8

a bankruptcy court "should determine only whether the trustee's judgment was reasonable and whether a sound business justification exists supporting the sale and its terms."[30]  "Normally sales will be for cash but in appropriate circumstances property may be sold for credit or may be exchanged if the transaction promotes the ultimate objective of liquidating...the estate in a manner most advantageous to creditors.  Thus the matter will ultimately rest in the judgment and discretion of the trustee...."[31]  In short, "[t]he trustee's business judgment is to be given 'great judicial deference.'"[32]

The trustee seeks the court's approval of Robert Giroux's offer.  Upon approval, Robert's offer would result in the reduction of claims against the estate by $125,112.24, with no need for potentially expensive and protracted claims litigation.  This would permit the trustee to expeditiously move to a final distribution.  After payment in full of the other non-subordinated general unsecured creditors, Robert would be the only remaining unsecured creditor of the estate.  He would be guaranteed to receive nearly $3,000 more under his offer than under the Johnstons' offer, if Brad's claims were to be allowed.  The Johnstons' analysis relies heavily on speculation that Brad's proofs of claim will be disallowed in full, but in light of the great deference this court must give the trustee's business judgment, mere speculation is insufficient to persuade this court that the trustee's judgment must be overruled.  On the facts as they currently stand, the trustee has established that Robert Giroux's offer is in the best (and paramount) interests of the estate as he has articulated a

---

[30]  3 COLLIER ON BANKRUPTCY ¶ 363.02[4] (Richard Levin & Henry J. Sommer eds., 16th ed.).

[31]  *Id.* at ¶ 363.02[2].  *See also In re Moreno*, 554 B.R. 504, 510 (Bankr. D. N.M. 2016) ("Before a sale of estate property outside the ordinary course of business may be approved, the Chapter 7 trustee must demonstrate 'sound business reasons' for the sale.").

[32]  *In re Psychometric Systems, Inc.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007), *citing In re Bakalis*, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998).

9

reasonable basis to believe that it provides a better result for the estate and its creditors than does the Johnstons' offer.[33]

## III. CONCLUSION

A chapter 7 trustee proposing a sale, or settlement, of estate property is entitled to great deference in exercising his or her business judgment in that context. In this instance, the trustee seeks authorization to sell the estate's remaining assets to Robert Giroux. Taking into consideration the facts of this case as they currently stand, the Johnstons' competing offer does not result in as great a benefit to the estate and its creditors as the offer the trustee seeks to accept. Accordingly, the trustee has established that the proposed sale of assets is in the estate's best interest, and that application of the *A & C* factors weighs in favor of approving the trustee's Motion to accept the proposal offered by Robert Giroux. This court will issue a separate order granting the chapter 7 trustee's motion to sell the debtor's remaining assets to Robert Giroux.

DATED:   December 11, 2018

BY THE COURT

/s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  W. Artus, Esq.
Philip & Rebekah Johnston, 4145 Kingston Drive, Anchorage, AK 99504
R. Crowther, Esq.
R. Longacre, Esq.
K. Battley, Esq.
ECF Participants per NEF
Case Manager

---

[33] The chapter 7 trustee and the Girouxes have also objected to the Johnstons' offer to pay the non-Giroux unsecured creditors directly, arguing that such payments are inconsistent with the statutory distribution requirements under § 726. Although this court is concerned about the potential conflict between the Johnstons' payment proposals and the requirements of the Bankruptcy Code, as stated in footnote 26 it has determined that issue is not dispositive for the reasons stated herein and therefore declines to address the issue.

10